JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Morris Edwards ("appellant"), appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm appellant's convictions, vacate his sentence and remand for the limited purpose of resentencing.
 I. {¶ 2} This appeal arises out of an aggravated burglary, robbery and stalking case. According to the case, on September 15, 2005, appellant was indicted in a four-count indictment in Case No. 470398. Count one of the indictment included aggravated burglary upon Josette Carney's ("Josette") home in violation of R.C. 2911.11. Count two of the indictment included robbery upon Josette in violation of R.C. 2911.02. Counts three and four included menacing by stalking in violation of R.C. 2903.211. Appellant stipulated to the repeat violent offender and notice of prior conviction specifications included in counts one and two. The stipulation was that appellant was convicted of rape in violation of R.C. 2907.02 on April 27, 1981.
 {¶ 3} A jury trial commenced on November 23, 2005. The jury returned its verdict on November 29, 2005, finding appellant guilty on all counts. In addition, on count three, the jury found appellant made a threat of physical harm to Josette. Moreover, on count four, the jury found that appellant did trespass on the land or premises where Josette lived and/or is employed.
 {¶ 4} Appellant was sentenced to six years on count one and three years on count two, to run consecutively. He was also sentenced to one year on count three and one year on count four. Counts three and four were to run concurrently with each other, but consecutively with counts one and two. Appellant was, therefore, sentenced to a total of ten years.
 {¶ 5} At the same time, the trial court found appellant to be indigent and appointed the Public Defender's Office to perfect an appeal on behalf of appellant. The trial court's sentence was journalized by the clerk of courts on December 7, 2005. Appellant then filed his notice of appeal on January 6, 2006.
 {¶ 6} According to the facts, the appellant and the victim, Josette, began dating in May of 2003. The relationship between the two of them lasted until late spring of 2005, when Josette ended it. Appellant lived with his mother, and Josette lived in an apartment by herself during most of the relationship. However, the parties did live together for a short period of time in the summer of 2003.
 {¶ 7} Josette testified that early on in the relationship she began to become suspicious of appellant. She said that she checked into appellant's background and learned that he had a violent past. Josette also testified that appellant was extremely possessive and would constantly drive by her house and park down the street.
 {¶ 8} During the relationship in late 2004, appellant won approximately $30,000 in the lottery. Appellant proceeded to buy Josette a watch, a pair of earrings, two pairs of shoes and a $500 car. Josette stated that shortly after receiving the car, she saw appellant under her car, and the brakes did not work after that. She said that she learned the brake cables had been cut, and she kept the cables on the advice of the police. However, Josette testified that she continued to date appellant and that he became increasingly violent as the relationship progressed.
 {¶ 9} Josette said that on one occasion appellant came to her house and "cold-cocked" her in the face as she opened the door. Josette's ex-husband, Toby Trevino, testified that he was present when this occurred. On another occasion, Josette said that appellant jumped out of a truck and assaulted her, sending her to the hospital with a broken collarbone. She testified that appellant also threatened her ex-husband, children and friends at various times. Josette testified that she decided to end the relationship in the spring of 2005.
 {¶ 10} During trial, Josette testified that she and appellant did not have much in common and sex was the main reason for the relationship. On cross-examination, Josette admitted that she and appellant had sex often. When defense counsel asked Josette if she ever informed appellant that she was HIV positive, the state objected. After a long discussion, the trial court sustained the objection. Josette admitted that she indulged in self-medication. She used marijuana daily to counteract side effects of medication she was taking for hepatitis. She said that she used to buy marijuana from appellant's brother. She also admitted that she used cocaine when she could obtain it.
 II. {¶ 11} Appellant's first assignment of error states the following: "Morris Edwards was denied his constitutional right to confront the witnesses against him, when the trial court improperly limited his cross-examination of Josette Carney, the complaining witness."
 {¶ 12} Appellant's second assignment of error states the following: "Morris Edwards was denied his constitutional right to trial before a fair and impartial jury by the repeated introduction of improper other acts evidence in his trial."
 {¶ 13} Appellant's third assignment of error states the following: "Appellant was denied his constitutional right to a trial by jury by the imposition of consecutive sentences."
 {¶ 14} Appellant's fourth assignment of error states the following: "Morris Edwards has been deprived of his constitutional right not to be put in jeopardy two times for the same act by his convictions of aggravated burglary and robbery, as those offenses are allied offenses of similar import."
 {¶ 15} Appellant's fifth assignment of error states the following: "Morris Edwards was deprived of his constitutional right to effective assistance of counsel, by trial counsel's failure to object to his multiple sentences for allied offenses of similar import."
 III. {¶ 16} Because of the substantial interrelation between appellant's first two assignments of error, we shall address them together. Appellant argues that the trial court improperly limited his cross-examination of Josette and improperly introduced other acts evidence.
 {¶ 17} The standard of review to be applied by a court with regard to a trial court's limitation of the scope of cross-examination is "abuse of discretion." Calderon v. Sharkey
(1982), 70 Ohio St.2d 218, syllabus. Trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation. Mueller v. Lindes, Cuyahoga App. No. 80522, 2002-Ohio-5465; Delaware v. Van Arsdall (1986),475 U.S. 673, 89 L.Ed.2d 674, 106 S.Ct. 1431. Further, not all error pertaining to limitations on cross-examination is reversible error. State v. Long (1978), 53 Ohio St.2d 91, 97-98,7 Ohio Op.3d 178, 372 N.E.2d 804.
 {¶ 18} We find the lower court's actions regarding Josette's cross-examination to be proper. Appellant's argument that the lower court erred in almost every conceivable way when it limited appellant's ability to cross-examine Josette is incorrect. Appellant had no reasonable basis for implying and produced no corroborating evidence or testimony that Josette was HIV-positive. Josette, under oath, denied having AIDS.[1]
She later testified that she had hepatitis and that appellant was fully aware of this fact and even took her to the doctors. Evid.R. 607(B) requires that "[a] questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." See, also, State v. Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus ("a cross-examiner may ask a question if the examiner has a good-faith belief that a factual predicate for the question exists").
 {¶ 19} Based on the evidence in the record, we find that the trial court did not abuse its discretion in limiting the cross-examination of Josette. Accordingly, appellant's first assignment of error is overruled.
 {¶ 20} Appellant argues in his second assignment of error that the trial court improperly allowed the introduction of other acts evidence. This evidence included the following statements: (1) Mr. Trevino's testimony that appellant told him, "I will bury you";2 (2) Mr. Trevino's testimony that, after appellant "cold-cocked" Josette in the face, Josette told him not to chase appellant because appellant may have a gun; (3) Josette's employer, Bob Weeks', testimony that, prior to hiring Josette, he was approached by appellant who told him that Josette would be a bad employee; (4) Josette's testimony that she performed her own investigation and discovered appellant had a violent past; and (5) Josette's testimony that she feared appellant because he was a sexual offender.
 {¶ 21} We find appellant's argument concerning the alleged prior acts to be without merit. The first three acts above were not introduced to prove the character of appellant in order to show that he is a person likely to commit the offense of menacing by stalking. Instead, they were introduced as evidence that appellant did, in fact, commit the offense of menacing by stalking Josette. Menacing by stalking requires proof that appellant engaged in a pattern of behavior which he knew would 2Tr. 280. cause Josette to believe that appellant would cause her physical harm or mental distress. R.C. 2903.211. These alleged prior acts were part of appellant's pattern of behavior. Appellant knew that threatening Josette's family and friends, assaulting her, carrying a gun, and intimidating her employer would cause Josette to believe that appellant would cause her physical harm or mental distress.
 {¶ 22} In addition, the first four alleged prior acts above were also admissible to show appellant's motive, intent, absence of mistake/accident, scheme, plan, or system. Evid.R. 404(B) provides:
"(B) Other crimes, wrongs or acts. — Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 23} We also find appellant's argument concerning the fifth alleged prior act to be without merit. In response to a question from the state about why she continued to see appellant after he assaulted her, Josette explained that she feared appellant because he was a "sexual offender." Appellant promptly objected and the trial court sustained the objection, the comment was stricken, and the jury was instructed to disregard Josette's statement. There was no further questioning or testimony concerning possible past sexual offenses committed by appellant. The jury had no basis, as appellant claims, for concluding from this that appellant was previously convicted of rape.
 {¶ 24} Accordingly, appellant's second assignment of error is overruled.
 IV. {¶ 25} Appellant argues in his third assignment of error that he was denied his constitutional right to a trial by jury by the imposition of consecutive sentences. In State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court found that several provisions of S.B. 2 violate Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403. Specifically, the court held: "Ohio's sentencing statutes offend the constitutional principles announced in Blakely in four areas. As was reaffirmed by the Supreme Court in Booker,
`Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'"
Foster, supra, at p. 82 (citing United States v. Booker
(2005), 543 U.S. 220, 224, 125 S.Ct. 738, 160 L.Ed.2d 621).
 {¶ 26} The Foster court severed R.C. 2929.14(B),2929.19(B)(2) and 2929.14(E) (4), which govern more than the minimum and consecutive sentences, and rendered them unconstitutional. As a result, the trial court is no longer obligated to follow these mandatory guidelines when sentencing a felony offender. "Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury." Foster, supra, at p. 90.
 {¶ 27} Thus, in accordance with Foster, we sustain this assignment of error, vacate appellant's sentence and remand for a new sentencing hearing. We note that the court may want to keep in mind the Ohio Supreme Court's holding in State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, at p. 38, 846 N.E.2d 1:
"Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing, * * * nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purpose of sentencing, and R.C. 2929.12, which provides guidance in considering the factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by the statutes that are specific to the case itself."
 {¶ 28} Accordingly, appellant's third assignment of error is sustained.
 V. {¶ 29} Appellant argues in his fourth assignment of error that he was deprived of his constitutional right not to be put in jeopardy two times for the same act by his convictions of aggravated burglary and robbery. Appellant contends that aggravated burglary and robbery are allied offenses of similar import and, therefore, he has been put in jeopardy two times for the same act. We do not find merit in appellant's argument.
 {¶ 30} The record in the case at bar demonstrates that appellant failed to raise this issue at trial and has, therefore, waived this argument. Appellate courts do not have to consider error which the complaining party could have called, but did not call, to the trial court's attention at the time when such error could have been avoided or corrected by the trial court. Stateex rel. Quarto Mining Co. v. Foremen (1997), 79 Ohio St.3d 78.
 {¶ 31} Assuming arguendo that appellant did not fail to raise this argument at the lower court level, his argument still fails.
 {¶ 32} R.C. 2941.25, multiple counts, provides the following:
"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committedseparately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
(Emphasis added.)
 {¶ 33} Under R.C. 2941.25(B) a defendant may be convicted of multiple offenses where his conduct results in two or more offenses of the same or similar kind committed separately, and the rights to protection afforded defendant by the principles of double jeopardy are not violated thereby. State v. Schaub
(1984), 16 Ohio App.3d 317.
 {¶ 34} Ohio courts use a two-tiered test to determine whether two crimes with which a defendant is charged are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import, and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. State v.Blankenship (1988), 38 Ohio St.3d 116; State v. Mughni (1987),33 Ohio St.3d 65, 67, 514 N.E.2d 870, 872; State v. Talley
(1985), 18 Ohio St.3d 152, 153-154, 18 OBR 210, 211-212,480 N.E.2d 439, 441; State v. Mitchell (1983), 6 Ohio St.3d 416,418, 6 OBR 463, 464, 453 N.E.2d 593, 594.
 {¶ 35} The elements of robbery and aggravated burglary did not correspond to such a degree that the commission of one offense necessarily resulted in the commission of the other.
"Comparing the elements of these crimes, we do not find that the elements correspond to such a degree that the commission of one offense will necessarily result in the commission of the other. For example, one may trespass in an occupied structure with the purpose to commit a felony other than a theft offense or without using or threatening the immediate use of force and be guilty of aggravated burglary but not robbery. Likewise, one may use or threaten the use of force in attempting or committing a theft offense in a place other than an occupied structure and be guilty of robbery but not aggravated burglary. Therefore, aggravated burglary under R.C. 2911.11(A)(3) and robbery under R.C. 2911.02 are not allied offenses of similar import, and Turner was properly convicted and sentenced for both crimes."
State v. Turner (Mar. 16, 1992), Clermont App. Nos. CA-91-03-017, CA-91-03-021 and CA-91-03-024.
 {¶ 36} In the case at bar, appellant was convicted of aggravated burglary in violation of R.C. 2911.11 and robbery in violation of R.C. 2911.02. Comparing the elements of these two crimes, we do not find that the elements correspond to such a degree that the commission of one offense will necessarily result in the commission of the other.
 {¶ 37} For example, one may trespass in an occupied structure with the purpose to commit a felony other than a theft offense or without using or threatening the immediate use of force and be guilty of aggravated burglary but not robbery. Likewise, one may use or threaten the use of force in attempting or committing a theft offense in a place other than an occupied structure and be guilty of robbery but not aggravated burglary.
 {¶ 38} Moreover, a review of the record in the case at bar demonstrates that the crimes were committed separately. Appellant committed aggravated burglary when he stole a key from the storage room in order to gain entrance into Josette's apartment with the purpose to commit a criminal offense. Appellant's mere entrance completed the burglary. "Whether an intended felony was committed is irrelevant to the burglary charge. But where the intended felony is actually committed, a new crime arises for which [appellant] may be convicted." State v. Frazer (1979),58 Ohio St.2d 253, 256.
 {¶ 39} We find that the evidence in the record demonstrates that the trial court's actions were proper. Appellant was properly convicted and sentenced for both crimes. Therefore, even if appellant had properly raised this argument on appeal, it still lacks merit.
 {¶ 40} Accordingly, appellant's fourth assignment of error is overruled.
 VI. {¶ 41} Appellant argues in his final assignment of error that he was deprived of his constitutional right to effective assistance of counsel. We do not find merit in appellant's final assignment of error.
 {¶ 42} In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
 {¶ 43} The Ohio Supreme Court set forth a similar two-part test:
"First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Bradley (1989), 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373.
 {¶ 44} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. Id.
 {¶ 45} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98, 17 Ohio B. 219,477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
"Judicial scrutiny of counsel's performance must be highly deferential * * *," and "* * * a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."
Strickland, supra, at 689.
 {¶ 46} Applying the above standards, we find that appellant has not demonstrated that prejudice resulted from the claimed errors of his trial counsel. Our consideration of the totality of the evidence does not indicate that the outcome of the trial was reasonably likely to have been different absent the allegedly deficient performance of counsel. The record contains sufficient evidence establishing appellant's presence and participation in the events for which he was convicted. Consequently, we find appellant's final assignment of error without merit.
 {¶ 47} Appellant's fifth assignment of error is overruled.
 {¶ 48} Appellant's convictions are affirmed, his sentence is vacated, and this case is remanded for the limited purpose of resentencing.
It is ordered that appellee and appellant bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J. and Kilbane, J. concur.
[1] Tr. 222.