[Cite as *Cleveland v. Garcia*, 2014-Ohio-1425.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100017**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## SAN PEDRO GARCIA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2012-CRB-026032

**BEFORE:** Boyle, A.J., S. Gallagher, J., and Rocco, J.

**RELEASED AND JOURNALIZED:** April 3, 2014

**ATTORNEY FOR APPELLANT**

John W. Hawkins
Parkhill Professional Building
35104 Euclid Avenue
Suite 305
Willoughby, Ohio   44094


**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law
Victor R. Perez
Chief Prosecutor
Verlinda L. Powell
Assistant City Prosecutor
City of Cleveland
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

{¶1} Appellant, San Pedro Garcia, appeals his domestic violence conviction, for which he received community control. He claims that prejudicial evidentiary decisions of the trial court precluded effective cross-examination of state witnesses. After a thorough review of the record and law, we affirm his conviction.

### Procedural History and Factual Background

{¶2} Appellant was indicted on July 31, 2012, on the following charges: domestic violence in violation of R.C. 2919.25, child endangering in violation of Cleveland Codified Ordinances ("C.C.O.") 609.04, two counts of aggravated menacing in violation of C.C.O. 621.06, and obstructing official business in violation of C.C.O. 615.06.

{¶3} A jury trial commenced on April 12, 2013. There the state presented the testimony of Jennifer Gonzales, Jessica Gonzales, and Cleveland police officers, Alex Cruz, Theresa Cavett, Detective Cynthia Oliver, Lieutenant Eric Tammisaar, and Sergeant Jose Delgado. Appellant presented the testimony of his cousin, Anthony Buchanan, his brother, Jesus Garcia, and Kristin Miranda, the wife of the man with whom Jennifer was accused of having an affair. The testimony at trial established the following.

{¶4} In the early morning hours of July 29, 2012, police were called to an apartment building that appellant owned and where he resided with his girlfriend, Jennifer Gonzales. Cleveland police officers arrived to the sounds of a domestic dispute

emanating from a ground floor apartment. Officers knocked on the doors and windows, ordering the occupants to allow them entry. These orders went unheeded, although the apartment grew quiet except for the wailing of a child. After five or ten minutes, Jennifer Gonzales opened the apartment door. Officer Alex Cruz testified that he observed Jennifer open the door holding a young child; both were crying, the child hysterically so. Officer Cruz also observed an injury to Jennifer's face. Jennifer and the child were removed from the apartment while it was searched. Other than Jennifer's other children, no one was found in the apartment. Jennifer testified that her boyfriend and the father of her youngest child, San Pedro Garcia, was the one who caused the injury to her face in the course of an argument the two were having. She also stated that he had left the apartment when he heard the police announce themselves outside the bedroom window. Police did not locate appellant that night. Jennifer's sister, Jessica Gonzales, the person who had called the police after hearing the fight from across the street, allowed Jennifer and her children to stay at her house that night.

{¶5} Later that day, around 1:30 p.m., Jessica was across the street from appellant's apartment at her sister-in-law's house. She testified that appellant approached her and threatened to kill her. She called the police and reported that appellant threatened her with a gun.[1] Police arrived quickly and set up around the building. Officers announced themselves and demanded that appellant come out. A

---

[1] Jessica's testimony is unclear about whether appellant had a gun when he threatened her. She first testified he did not, but later changed her testimony to indicate appellant did possess a gun.

tense, two-hour standoff ensued. It ended when appellant was put in contact with the lieutenant in charge by one of appellant's family members via cell phone. Appellant was on the roof of the building and agreed to surrender. Appellant was taken into custody without incident, and no gun was found in his possession or on the premises.

{¶6} The jury returned verdicts on April 15, 2013, and found appellant guilty of domestic violence only. He was found not guilty of the other four charges. Appellant was sentenced to three years of community control. This appeal followed, raising one assignment of error:

> [Appellant] was materially prejudiced by the denial by the court to allow defendant to fully and effectively cross-examine the alleged victim regarding her bias, prejudice and motive to misrepresent the facts.

## Right to Cross-examination

{¶7} Appellant claims the trial court erred in limiting cross-examination. The standard of review has previously been set forth by this court:

> The standard of review to be applied by a court with regard to a trial court's limitation of the scope of cross-examination is "abuse of discretion." *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 436 N.E.2d 1008, syllabus. Trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation. *Mueller v. Lindes*, [8th Dist.] Cuyahoga App. No. 80522, 2002-Ohio-5465; *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L.Ed.2d 674, 106 S.Ct. 1431. Further, not all error pertaining to limitations on cross-examination is reversible error. *State v. Long* (1978), 53 Ohio St.2d 91, 97-98, 7 Ohio Op.3d 178, 372 N.E.2d 804.

*State v. Edwards*, 8th Dist. Cuyahoga No. 87587, 2006-Ohio-5726, ¶ 17.

{¶8} Appellant more specifically claims that Evid.R. 611(B) and 616(A) allow for cross-examination on all relevant issues, and the trial court precluded appellant from fully inquiring into Jennifer's credibility, motives, biases, and prejudices. Evid.R. 611(B) sets forth the scope of cross-examination as "permitted on all relevant matters and matters affecting credibility." Evid.R. 616 sets forth methods of impeachment, including bias under Evid.R. 616(A): "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶9} During appellant's cross-examination of Jennifer Gonzales, three sidebars were conducted after the state objected to questions posed by appellant's attorney on relevancy grounds. The first sidebar was the only one that was preserved on the record. There, the following appears in the trial transcript:

> [Appellant's counsel, Mr. Malbasa] Q: Let's talk about the time leading up to July 29th. San Pedro Garcia had been in an accident, is that right?
>
> [Jennifer Gonzales] A: Yes.
>
> [The state, Ms. Powell]: Objection. Relevance.
>
> THE COURT: Sustained.
>
> MR. MALBASA: Could we have a brief sidebar?
>
> THE COURT: Yes.
>
> MR. MALBASA: Can we talk about it on the record please?
>
> THE COURT: This is a sidebar on the record.

(Thereupon, the following proceedings were had out of the hearing of the jury.) —

MR. MALBASA: With respect to relevance, and part of what we believe in this case that Jennifer, Jessica were tired of dealing [with] San Pedro since his head injury. He has been very difficult. I think she can testify how he changed in that time, since that accident. That's where I am going. Those are the questions I want to ask.

MS. POWELL: I think that's very broad and I don't think it's relevant to the incident on July 29, 2012. I mean you can ask questions — I mean that's given so much broad leeway and almost two, two and a half month span I am not really sure where it's relevant to this incident. You can ask her are you tired of dealing with him or at that point did you just want to be done with him. Why are we —

THE COURT: Scott, what was the date? Do you know?

MS. POWELL: It was May sometime.

MR. MALBASA: May sometime.
THE COURT: May, June, July. That's not that far. I will allow it. Let's just, can you kind of — I mean is your line of inquiry going to be did he have a severe head injury?

MR. MALBASA: I'm not asking her to give his medical diagnosis. I am asking her to explain the changes and the months leading up to that.

MS. POWELL: But that still is going into okay — yea he had a head injury and I think you're skirting around —

MR. MALBASA: This is — I'm sorry. Go ahead, judge.

THE COURT: I'm trying — didn't we have a psych eval done on him for that reason?

MR. MALBASA: Yes.

THE COURT: And didn't the psych eval really say it wasn't anything other than malingering.

MR. MALBASA: They all said he had a concussion that he suffered from — from that concussion after the accident. They did say he had a concussion but they also disputed about the severity after the fact because he decided not to tell people about certain issues until approximately a month after the incident. So they were questioning whether or not — going back to malingering — are you just trumping up certain issues plan.

MR. MALBASA: Those psych evals were done to determine competency at the time and competency for trial.

THE COURT: Right right right okay.

MR. MALBASA: I'm not saying he was incompetent at the time. I'm not saying he is incompetent now.

THE COURT: Yes. Are you going to talk just about the behavioral changes?

MR. MALBASA: Yes, behavioral changes.
THE COURT: Well just don't get too deep into expert theories. You are going to ask her if she observed anything since that accident. I guess you can ask her if she observed any changes. Don't get into the concussion and stuff.

MR. MALBASA: I won't ask her to —

THE COURT: Because we are not having any expert testimony about it.

MR. MALBASA: Okay.

THE COURT: Just ask her what her observations were. That's all you can do.

MR. MALBASA: All right.

THE COURT: Thank you.

{¶10} This sidebar resulted in limiting the testimony in such a way as to prevent the witness from getting into expert opinions about the causal relationship between a head injury and changes in behavior. This was not an abuse of the trial court's discretion.

Such information is not in the general knowledge of an ordinary person. Evid.R. 701 allows a lay witness to testify to "opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The court allowed appellant to elicit testimony about perceived changes in behavior while still narrowing the focus to relevant, admissible evidence within the knowledge of the witness. Going further would get into the province of expert testimony where answers would be "beyond the knowledge or experience possessed by lay persons * * *." Evid.R. 702. This was not an abuse of the trial court's discretion.

{¶11} The next question to prompt an unrecorded sidebar was, "[d]id you have parties at the house?" The objection was sustained, but it appears to have been because of the broad nature of the question. It was not framed in any span of time. Indeed it was not limited in any way. The question asked following the sidebar was nearly identical except it actually was limited to a relevant time frame: "Jennifer you had parties at the house while [appellant] was away [in Puerto Rico in the days preceding July 29], is that correct?" This question was answered in the affirmative without objection.

{¶12} The final questions that prompted a sidebar came immediately thereafter. "Okay. And did you have the person that you cheated on him with over at the house?" The state objected without a stated reason, and it was sustained by the court. Appellant's attorney then asked, "Jennifer, did the person that you cheated on [appellant] with at any time hit you * * *?" This again prompted an objection, which was sustained.

Another sidebar ensued that was not preserved on the record. The objections appear to have been sustained based on the form of the questions. This is also apparent from the record because appellant's attorney was next allowed to question Jennifer about her affair with another man: "Jennifer, did you have the person who you were cheating on San Pedro with in the house in the three or four days before San Pedro returned?" There was no objection, and appellant was allowed to freely cross-examine the witness on this topic including whether this person hit her in the days before the July 29, 2012 incident.

{¶13} Based on this record, the court only limited appellant's cross-examination in that it required properly framed questions. In fact, no further objections or limiting by the court appear in the cross-examination or recross-examination of Jennifer.

{¶14} The record is devoid of any limitation placed on appellant's attorney regarding cross-examination apart from precluding expert testimony about the nature of head trauma and resultant behavioral changes. Appellant's right to confront the witnesses against him was not abridged by the trial court. Appellant's arguments about the court being concerned with a competency challenge and unfairly limiting testimony is contrary to the record where the court allowed appellant to elicit testimony about Jennifer's observation of behavioral changes in appellant following an accident. Therefore, this assigned error is overruled.

{¶15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR